IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

BILLINGS DIVISION

| | | |
|---|---|---|
| DANNY RAY KELLY, | ) | Cause No. CV 11-72-BLG-RFC-CSO |
| Petitioner, | ) | |
| vs. | ) | FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE |
| WARDEN MIKE MAHONEY; ATTORNEY GENERAL OF THE STATE OF MONTANA, | ) | |
| Respondent. | ) | |

On June 20, 2011, Petitioner Danny Ray Kelly filed this action for writ of habeas corpus under 28 U.S.C. § 2254. Kelly is a state prisoner proceeding pro se.

Kelly's petition raised the issue of time bar. *See* Time Bar Argument (doc. 1-1) at 2-6. On July 14, 2011, Kelly was ordered to show cause why his petition should not be dismissed with prejudice as time-barred. He responded on July 27, 2011. Resp. to Order (doc. 8).

Due to a clerical error, Kelly's timely response was not addressed in the usual course. The Court apologizes for the delay.

## I. Background

Kelly was convicted of aggravated kidnapping and two counts of sexual intercourse without consent in Yellowstone County in 1993. Pet. (doc. 1) at 1-2 ¶¶ 1-6, *id.* at 6-8; Mont. Code Ann §§ 45-5-303(1), -503(1), (3)(a) (1991). He appealed. His convictions were affirmed but his case was remanded for re-sentencing. *State v. Kelly*, 876 F.2d 641, 644 (Mont. 1994). On direct appeal following re-sentencing, his counsel filed an *Anders* brief, *see Anders v. California*, 386 U.S. 738, 744 (1967); Mont. Code Ann. § 46-8-103(2) (1993), and Kelly was given 30 days to file a brief of his own. He did not do so; he explains that he was transferred out of state and neither learned of his opportunity to file a brief nor had access to a law library "until after months had passed beyond petitioner's court-ordered time/date to file his appeal." Brief (doc. 1-1) at 2. On March 21, 1995, the Montana Supreme Court granted counsel's motion to withdraw and dismissed the appeal. *State v. Kelly*, No. 94-579 (Mont. Mar. 21, 1995) (mem. disp.) (Pet. App. 4 (doc. 2-4)).

Kelly returned to the State of Montana on September 23, 1999. Resp. to Order (doc. 8) at 2. At some point "a few years later," he filed a petition for postconviction relief in the trial court. It was dismissed on grounds of procedural bar and untimeliness. On September 28, 2004, the Montana Supreme Court affirmed the trial court's dismissal. Order at 2 ¶ 4, *Kelly v. State*, 2004 WL 2165878, No. 04-179

(Mont. Sept. 28, 2004) (mem. disp.), *docket number stated in* Pet. at 2 ¶ 9(b).

Kelly filed his federal petition on June 15, 2011. Pet. at 14; *Houston v. Lack*, 487 U.S. 266, 276 (1988).

## II. Federal Limitations Period

### A. Application

Generally, a state prisoner must file a federal habeas petition within one year of the date his conviction becomes final by the conclusion of direct appeal. 28 U.S.C. § 2244(d)(1)(A). Kelly's conviction became final ninety days after the Montana Supreme Court ruled, that is, on June 19, 1995, when his time to file a petition for writ of certiorari in the United States Supreme Court expired. U.S. S. Ct. R. 13(1), (3); *Gonzalez v. Thaler*, 565 U.S. __, No. 10-895, slip op. at 15 (U.S. Jan. 10, 2012); *Clay v. United States*, 537 U.S. 522, 527-28 (2003); *Bowen v. Roe*, 188 F.3d 1157, 1159 (9th Cir. 1999).

Although Kelly's conviction became final on June 19, 1995, his federal petition was not due on June 19, 1996, because the one-year limitations period did not exist until April 24, 1996, when Congress passed the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Instead, Kelly should have filed his federal petition within one year of AEDPA's enactment, that is, on or before April 24, 1997. *Patterson v. Stewart,* 251 F.3d 1243, 1246 (9th Cir. 2001). Thus, Kelly must explain

why he filed his federal petition more than fourteen years too late.

The federal limitations period is tolled while a properly filed action is pending in state court. 28 U.S.C. § 2244(d)(2). Here, however, the federal limitations period expired more than seven years before Kelly filed his postconviction petition in the trial court, so there is no foundation for statutory tolling under (d)(2).

## B. Excusing Untimely Filing

The foregoing analysis was set forth in the Order to Show Cause, dated July 14, 2011. Kelly was given an opportunity to respond to it by showing cause why his petition should not be dismissed with prejudice as time-barred. *Herbst v. Cook*, 260 F.3d 1039, 1043 (9th Cir. 2001). He was advised that he could do so in one, two, or all three of the following ways:

1. He might show that the analysis is incorrect and his petition is timely under 28 U.S.C. § 2244(d)(1) or some other subsection; or

2. He might show that he pursued his rights diligently, but some extraordinary circumstance stood in his way and prevented timely filing in this Court, *Holland v. Florida*, __ U.S. __, __, 130 S. Ct. 2549, 2562 (2010); or

3. He might show that, in light of all the reliable evidence, "it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt," *Lee v. Lampert*, 653 F.3d 929, 937 (9th Cir. 2011) (en banc) (citing *Schlup*

FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE / PAGE 4

*v. Delo*, 513 U.S. 298, 327 (1995)).[1]

### 1. **<u>Actual Innocence</u>**

In the course of this action, Kelly has offered two responses to the time bar. First, his petition asserts that he is actually innocent. His claim is based on a general allegation that "the person . . . who had custody/physical control of his crime evidence . . . was found guilty of contaminating and damaging said crime evidence in numerous cases . . . and had to leave/quit his job." Time Bar Argument (doc. 1-1) at 3.

In *Lee,* the court held that to present otherwise time-barred claims to a federal habeas court, a petitioner "must produce sufficient proof of his actual innocense to bring him 'within the 'narrow class of cases . . . implicating a fundamental miscarriage of justice.'" *Id.*, 653 F.3d at 937 (quoting *Schlup,* 513 U.S. at 314-15). Kelly does not suggest any proof to support a contention that "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id.* Kelly does not mention any evidence in his favor at trial or any new evidence that has come to light since then. Therefore, the only facts now before this Court are those summarized in the opinion of the Montana Supreme Court:

---

[1] The Order to Show Cause was issued before the en banc decision in *Lee*. Nonetheless, *Majoy v. Roe*, 296 F.3d 770, 776 (9th Cir. 2002), was cited, and the Court noted the pendency of *Lee*. *See* Order to Show Cause at 5 & n.2. Kelly has had ample opportunity to respond.

> [Kelly] went to the room where the children were watching T.V. and told J.C., who was then eleven years old, that her mother wanted him to take her to the store to buy diapers and formula. J.C. went to ask her mother if it was alright for her to go to the store, but she could not awaken her. J.C. then went with Kelly to his car, however he did not take her to the store but rather took her to various locations, including the apartment where Louis Hollingshed lived, and subjected her to sexual acts.
>
> While in Hollingshed's apartment, J.C. ran into the kitchen grabbed a knife and stabbed Kelly twice in the leg. Kelly struggled to get the knife back from J.C. and in doing so J.C.'s finger was cut. Kelly demanded that J.C. clean up the blood on the floor, so J.C. attempted to do so with a towel. A short time later they left the apartment. While they were getting into Kelly's car J.C. managed to run to a nearby business where Angela Schneider was working. . . . After leading the police on a high speed chase, Kelly was arrested and taken into custody.
> . . .
> Louis Hollingshed testified that Kelly visited his apartment with a young girl, that he saw blood on the kitchen floor, and that Kelly had a cut on his thigh. Hollingshed asked Kelly what happened and Kelly replied, "The bitch cut me." Hollingshed also testified that the young girl was frantic, crying, and emotionally upset.
>
> Angela Schneider testified that J.C. ran to her workplace shaking and screaming "he is going to kill me," and pointed to a black man in a blue car. The emergency room doctor who examined J.C. shortly after the incident testified that she had lacerations on her fingers, and other injuries consistent with someone who had been sexually and physically assaulted.

*Kelly*, 876 P.2d at 643, 645. The Montana Supreme Court found "that there was substantial direct and corroborative evidence of Kelly's guilt." *Id.* at 645.

Additionally, it is not sufficient for Kelly to show that a jury might have decided to acquit him. He must give some indication that he could establish, by a

preponderance of the evidence, that no reasonable juror would have voted to convict him. Kelly attached the Montana Supreme Court's decision to his petition, *see* Br. in Supp. App. 1 (doc. 2-1); *see also* Resp. to Order Ex. B (doc. 8-2), and he was given a specific opportunity to allege facts that would tend to show his actual innocence. Order to Show Cause at 5 ¶ 3 and 6 ¶ 3. But Kelly not only ignores the facts established at trial beyond the evidence in the custody of the crime lab technician, he also fails to allege any additional facts that might affect a reasonable juror's assessment of the evidence.

In his response to the Order to Show Cause, Kelly mentions his claim of actual innocence, but he emphasizes instead his belief that an alleged error of constitutional dimension by the trial court – that is, violation of his Fifth Amendment right to remain silent – deprived the trial court of jurisdiction to adjudge Kelly guilty. Resp. to Order at 3-7. This argument is specious. The *Lee/Schlup* standard addresses the facts of the defendant/petitioner's conduct at the time of the crime, not alleged post-verdict or sentencing errors by the trial court.

Kelly does not raise any facts to warrant further inquiry into his bare claim of "actual innocence".

### 2. Extraordinary Circumstances Preventing Timely Filing

Second, in his response to the Order to Show Cause, Kelly asserts that he

pursued his rights diligently, but an extraordinary circumstance stood in his way and prevented timely filing. It is "extraordinary," he says, that he is not capable of filing legal documents without the assistance of jailhouse lawyers, and he had no assistance from "approx. around the spring of 2005" until "recently," because inmate James Ball was not available to help him during that time. Resp. to Order at 2-3; *id.* Ex. A, Ball Aff. (doc. 8-1) at 2-3.

Kelly offers no reason that Ball, who assisted Kelly with his state postconviction petition, could not have assisted him with filing a timely federal petition between 1999 and the spring of 2005. The Ninth Circuit has held that a two-year state postconviction limitations period neither tolls nor extends the time to file under the federal limitations period. *Ferguson v. Palmateer*, 321 F.3d 820, 822-23 (9th Cir. 2003). But even before *Ferguson* was decided, it was "unreasonable for a federal habeas petitioner to rely on a state statute of limitations rather than the AEDPA's statute of limitations." *Id.* at 823.

Additionally, Kelly proffers no evidence, nor even an allegation, that he sought counsel or sought assistance from inmates other than Ball during the six years of Ball's absence or that, despite diligently seeking assistance, he was unable to obtain it, or that his mental difficulties are so serious that he could not file on his own or recognize the need to seek assistance. *Cf. Bills v. Clark*, 628 F.3d 1092, 1100-01 (9th

Cir. 2010).

Kelly's response to the Order to Show Cause does not suggest he could show extraordinary circumstances or reasonable diligence. Therefore, the untimeliness of his petition cannot be excused based on extraordinary circumstances.

### 3. **Conclusion**

Kelly was specifically advised that "[f]ailure to set forth any relevant fact or argument in response to this Order may preclude consideration of the fact or argument at a later stage of the proceeding." Order to Show Cause at 6 ¶ 3. He does not dispute the correctness of the Court's analysis of the limitations period's application. His response to the Order to Show Cause does not suggest he might be able to prove either actual innocence or entitlement to equitable tolling.

A petitioner "who is able to state facts showing a real possibility of constitutional error should survive Rule 4 review." *Calderon v. United States Dist. Court,* 98 F.3d 1102, 1109 (9th Cir. 1996) ("*Nicolaus*") (Schroeder, C.J., concurring) (referring to Rules Governing § 2254 Cases). But where the petitioner does not state such facts and "does not dispute that the facts reported in the state court opinions faithfully and accurately reflect the record," the district court need not go further and independently review the record. *Clark v. Waller*, 490 F.3d 551, 555 (6th Cir.), *cert. denied,* 552 U.S. 1030 (2007). Consequently, Kelly's petition challenging a 1993

conviction should be dismissed with prejudice as time-barred.

### III. Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2254 Cases. A COA should issue as to those claims on which the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Where a claim is dismissed on procedural grounds, a petitioner must make a showing both under 28 U.S.C. § 2253(c) and a showing that the procedural ruling is debatable. *Lambright v. Stewart*, 220 F.3d 1022, 1026 (9th Cir. 2000) (quoting *Slack*, 529 U.S. at 484). If one prong cannot be met, there is no need to consider the other. Rule 11(a), Rules Governing § 2254 Cases (requiring specification of issue meeting § 2253(c) standard only where COA is granted); *cf. Gonzalez*, No. 10-895, slip op. at 9.

Here, a state prisoner filed a petition in federal court in 2011 challenging a conviction he incurred in 1993. Although Kelly claims he was without legal

assistance for several years, he admits he had legal assistance for several years. He did not file when he had assistance. In addition, Kelly falls far short of raising even a realistic possibility that he might show actual innocence. Reasonable jurists would not prolong this proceeding. A certificate of appealability is not warranted.

Based on the foregoing, the Court enters the following:

### RECOMMENDATION

1. The Petition (doc. 1) should be DENIED on the merits.

2. The Clerk of Court should be directed to enter by separate document a judgment in favor of Respondents and against Petitioner Kelly.

3. A certificate of appealability should be DENIED.

### NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Pursuant to 28 U.S.C. § 636(b)(1), Kelly may serve and file written objections to this Findings and Recommendation within fourteen (14) days of the date entered as indicated on the Notice of Electronic Filing. If Kelly files objections, he must itemize each factual finding to which objection is made and must identify the evidence in the record he relies on to contradict that finding; and he must itemize each recommendation to which objection is made and must set forth the authority he

relies on to contradict that recommendation. Failure to assert a relevant fact or argument in objection to this Findings and Recommendation may preclude Kelly from relying on that fact or argument at a later stage of the proceeding. A district judge will make a de novo determination of those portions of the Findings and Recommendation to which objection is made. The district judge may accept, reject, or modify, in whole or in part, the Findings and Recommendation. Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

<u>Kelly must immediately notify the Court of any change in his mailing address by filing a "Notice of Change of Address."</u> Failure to do so may result in dismissal of his case without notice to him.

DATED this __20th__ day of January, 2012.

        /s/ Carolyn S. Ostby
        Carolyn S. Ostby
        United States Magistrate Judge